Thank you, Your Honor. Please, the Court, my name is Charles Talbot and I represent Ms. Boren in this case. This is a Social Security Disability Appeal. Now, there's an interesting administrative issue in this case, and the fact that there's been actually two applications filed in the case, and so what that does is it raises a couple of issues, one of which is the race-judicata effect of the prior adjudication. There's a little twist in this case in the sense that the second application was filed before the termination of the first proceeding. The second application was filed approximately six months prior to the decision by the Appeals Council in the first case. It also involves a situation where we have a medical report from an attending treating doctor who relates disability back to the opinions of a Dr. Royce Van Gerpen, who was a doctor who was asked by the first judge in the first application to do an assessment of the claimant. And Dr. Kirkham's opinion is really not discussed by the judge in the second application and the second opinion. I must advise the Court there have been some developments in this case that are not part of this record. When this case was appealed to the Federal court, If they're not part of the record, we can't consider them. Okay. If, as a result of the developments, it would be appropriate to dismiss the appeal or hold it in abeyance, we would consider that. I don't think it does. All right. It just is a matter of background for the Court. Right. It's always interesting, but we can't consider it, so. All right. What happened was, is that if you. So, I don't want to hear about it. All right. All right. Thank you. We're going to recognize this case, flip this case, because there was partial relief granted by the Federal District Court in this case. But the case now comes before this Court on the issue of the res judicata effect of the first proceeding, as well as the opinion of Dr. Kirkham regarding the claimant's disability back to 1998. On the first issue, the administrative details indicate that the first application was filed in November of 2000. There was a, excuse me, filed in January of 1998. There was a hearing in July of 1999 that was continued because the claimant was not represented at the time. And so a second hearing was held in November of 1999, which resulted in an unfavorable decision in February of 2000. Now, the claimant was not represented in the first hearing that was held on the first application. And at the second hearing, there was a non-attorney representative attended at the hearing. And it's not clear from this record how much involvement that non-attorney representative had in the case, other than appearing at that second hearing. However, prior to the first hearing, the ALJ sent Ms. Soborin to be evaluated by Dr. Van Gerken. In his evaluation, he suggested that an MRI needed to be obtained and the claimant needed to be seen by an orthopedist specialist. Apparently, that was not acted upon by the ALJ. After the first hearing was continued so as to allow Ms. Soborin to obtain representation, the judge sent Ms. Soborin to see a second specialist, a Dr. Bagby. He also recommended that an MRI be obtained. And he was provided interrogatories by the ALJ, which he said he could not answer until he got the results of the MRI. Dr. Cushing started treating Ms. Soborin in 2000. It took him two years to get permission from the Welfare Agency of the State of Washington to get an MRI done. When it was done, finally, in October of 2002, the findings were so significant that she was immediately referred to a neurosurgeon and surgery was performed in less than a month. We have doctors all along saying that she needed an evaluation, and when the evaluation was finally done, it resulted in a surgery. Would that affect his disability claim? Well, the judge in the first case... Or only the SSI? I'm sorry? Or would it only affect the SSI claim? Well, if the first claim is approved, if the first claim is reopened, or if we accept the opinion of Dr. Kirkham that she was disabled at least as far back as that first evaluation by Dr. Van Gerpen, she would now qualify for Title II benefits. The question is when that entitlement would start would depend upon whether we're basing a decision on the second application or the first application, because under the rules, a person can only be paid Title II benefits 12 months prior to an application. So if this Court says the first application stands as the first decision stands and we don't reopen it, then she would only be in it. But if you find that Dr. Kirkham's evidence, which, again, was not discussed by the ALJ in the second case directly, then she would be entitled to Title II benefits. What would the effect of Race to the Conahab? Well, the Race... If we assume that she is entitled to a finding of disability based upon the report of Dr. Kirkham, the practical effect is when does the Title II benefits start? Because if they're based upon the second application, then they would only go back a year before November 17, 2000, which is the date of the second application. Isn't there also a problem with Dr. Kirkham's opinion in two regards? One is that he didn't become the doctor until after 2000, and the way he couched his opinion is one that the Commissioner views as being within the Commissioner's judgment and not an expert's judgment if you just simply say this person is disabled. So how... I know that that opinion has been discounted as a result of that. Why would that be an error? Well, Dr. Kirkham is the treating physician, and when he rendered his opinion in 2003, he had been the attending physician at that point for almost three years. He also had the benefit of the earlier reports by the various doctors that the ALJ had sent Ms. Boren to go see. So it's like he... You're sort of saying that his treating physician role relates back, even though he wasn't the treating physician in 98, but that he gets grandfathered into that position in effect? There's an SSR on point, and I'm not sure of the number. I could provide it to the court. It's like 8315, or it talks about medical opinions on onset dates. A doctor or an expert can render an opinion on onset, even on periods of time before maybe there's records, before there may be treatment, depending upon... Does that Social Security Circular relate to the effect given if it's a treating versus an examining or non? It doesn't mention the status of the person rendering the opinion. Right. But there are some conditions that obviously have a longitude. Right. No, I understand your point. You might want to reserve your remaining time. Thank you. You have a minute and a half. Good morning, Your Honors. May it please the court. My name is Joanne D'Antonio. I'm here on behalf of the Commissioner of Social Security. With my time, I'd like to focus on the central issue, and that essentially is this onset date of October 2002 and Dr. Kirkham's opinion. I do take issue with counsel's statement that the ALJ did not address Dr. Kirkham's opinion, 2003 opinion. He did so at transcript page 18, and he rejected that for the main reason that it relied almost exclusively on Dr. Van Gerpen's opinion, which the ALJ discounted and is not on appeal today. Whose opinion, in turn, relied on plaintiff's objective statements, which were found incredible by the ALJ, which is also not on appeal today. In reviewing an onset date, the Court looks to see if there is substantial evidence to support that onset date, not whether another date could actually or reasonably address it, and that's under the Magdalena's case. Here, there is substantial evidence to support that 2002 date. I kind of call, what I call the kitten incident in September of 2002 was a very significant incident and made a big difference in her physical condition from 98 on. But he was a treating physician from the time that she went to Moses Lake Clinic, July 18, 2000, so he was the treating physician during all that time. Correct. He was from 2000 to 2002. He was not prior to that time. In 2002, we have this incident where she bent down to pick up a kitten, and she reports to both Dr. Higgins, who was her orthopedic surgeon, and to Dr. Kirk, her treating physician, that when she bent down, she had this sudden onset of low back pain. At the record at 235, she tells Dr. Higgins that before this incident, her pain was much less. The record at 247, she tells Dr. Kirkham that she went to a chiropractor. The first time was okay, but the second time she went back, he made it worse. At 244 in the record in October of 2002, Dr. Kirkham writes a letter or a note where he refers her to Dr. Higgins because there's been a significant change in her usual chronic pain. It's now more acute, and this is now a recent re-injury, and there's an exacerbation of her condition. And at 236, Plaintiff tells Dr. Higgins that she's now in more constant pain than she's been before, and that in the past, she's had pain. However, it's been relieved by chiropractic treatments. So we see that we have a significant change in what has happened to her between 98 and 2000, and 2000 and 2002. The ALJ probably rejected Dr. Kirkham's opinion because it was based on Dr. Van Gerpen's opinion, but also because it's not supported by the record. Even a treating physician whose opinions are not supported by their own notes or conflicting evidence contrary is not entitled to the weight that Plaintiff would ask that be given. On the issue of reopening, the Court doesn't have jurisdiction to review that, and only in two circumstances. One, that claimant is able to establish a due process violation, or that the ALJ has, in fact, reopened the claim de facto. If one of these is established, then the Court then gets to review whether or not there was good cause to reopen. On the plaintiff argues that the denial notices back that state, we're going to review your claim back to 1998, is somehow telling her that we're going to reopen your claim and we're going to look at it back to your original onset of 1995. The notices don't say that. They don't say anything about reopening. What they do is they state a legal fact that in order for her to be considered for her disability insurance benefit claim, which she made it in her second application, that she had to prove that she was disabled back to 1998, her date last insured. We're not talking about administrative res judicata, right? Yes, we are. What do you do with the specific language in the Lester case that says, nor is res judicata to be applied where the claimant was unrepresented by counsel at the time of the prior claim? Your Honor, Lester is clearly distinguishable in this case. In the Lester case, what the argument was about was whether or not the ALJ could apply res judicata to a subsequent period of disability. So in this case, the res judicata was applied from 1998 to 2000 when the first ALJ decision was made. And the ALJ in the second decision only looked at whether or not he should reopen that period. In Lester, the proposition was that the ALJ would then take a look at, if it was this case, would take a look at whether or not that presumption or that finding would continue on until she could prove changed circumstances. But what do we do with the specific statement of the panel in Lester that I just quoted? Well, in fact In my governance. In the other cases that look at res judicata where there was not a subsequent where the application of res judicata was not being proposed to be prospective, the courts have said that, yes, we'll look at whether or not there is counsel, but that's not our only factor. We still want to see that there is a due process violation. And basically, due process violation is that the record was so incomplete that it's tantamount to a due process violation. The only problem is that isn't what Lester says. But Lester is distinguishable in the fact that Lester is talking about a different circumstance. Lester is talking about whether or not we should prospectively look at due process, whether prospectively we should apply this res judicata. I can't imagine a clearer statement than that that says that nor is res judicata to be applied where the claimant was unrepresented by counsel at the time of the prior claim. How do we get around that statement? Because the court also goes on to look whether or not there was a due process violation. It doesn't stop the inquiry there. And I think that it's clearly distinguishable in this case because of the facts and the application of the res judicata from forth on forward, versus this case where we're looking at whether or not there was a due process violation in the past. You said as you were trying to distinguish Lester that other cases have backed away from Lester. What cases do you have in mind? Well, I haven't said that they backed away. What I've said is that there's a difference between Lester and the other cases in that none of the other cases were strictly reversed or reopened based on the fact that the person was not represented. They also looked to see whether or not the record was fully developed and developed. I'm looking at the Thompson case as the one case. It looks when the claimant's not represented by counsel, the court will look to see whether or not the ALJ pursued the facts and developed the records. I've got Thompson here. Can you give me a page site so I can read along with you? I'm sorry. I can't. I just have a summary of that one. Oh. In that case, they looked at the fact that he was unrepresented and during the first hearing, the ALJ didn't ask any questions, didn't develop the record because he was pro se. What year is Thompson? I don't have my hand on that at the moment. Thank you. I'm trying to look here. Thompson is 1982. And Lester. And the duty to fully develop is at page 941. And Lester is 1995? Lester is 95-96, amended 96. So even if we don't apply, if we are not going to apply race judicata in this case, that's where the court is leaning, we still look to see whether or not it basically, whether or not there was good cause, if you are going to review that. In this case, there was not good cause. The record was fully developed. There was sufficient evidence for the ALJ to have made his decision. Under the good cause standard, the plaintiff is alleging new and material evidence because of this 2002 MRI and stating that we should have looked at this to back date to 1998 because the ALJ did not develop the record by ordering an MRI when two doctors asked him to. The problem with that issue is that the duty developed by the first ALJ is not properly before this Court. That is something that we should have, that she should have appealed at the time so that the Court could have done a review of the record to determine whether or not the ALJ did follow up on their duty to review. The duty to develop record, to develop the evidence is only when the evidence is ambiguous and insufficient. In this case, there's no ambiguity about the evidence. The ALJ found that even considering, this is in the first hearing, the ALJ found that even considering plaintiff's statements, her activities and the medical evidence that no additional tests were necessary. The evidence was sufficient to make an RFC or residual functional capacity. There was an examination. Your time has expired. Thank you. I think we have to look at the fact that 20 CFR 404-988-989 provide that reopening as appropriate when there's new and material evidence. The thing that concerned us in this case is that when the first ALJ sent Ms. Foran to the first doctor, he expected, I assume, to rely on what that doctor told him, and the first doctor said, I need an MRI to verify some of the things I'm seeing here. No MRI is done. After the first hearing, he orders a second examination, and he sends the second doctor a set of interrogatories, asking questions of the second doctor. The second doctor says, I can't answer these interrogatories without an MRI because I'm seeing things here that require an MRI. No MRI is done. The judge then says, I've got enough medical evidence to make a decision in this case. Doctor one and doctor two says, I can't. This is ALJ number one? ALJ number one. Doctor one and doctor two said, I can't make a decision in this case without further diagnostic evidence, which the ALJ didn't get, which he had a duty to get with an unwrapped claimant. And then when we finally do get an MRI in the second case in 2002, it discloses the very thing that everybody's been concerned about for four years, and the case should have been reopened because the first two doctors in the first case were concerned about need for diagnostic testing that didn't take place for four years. And when we finally get it, this lady's on the table in less than a month. Thank you. Thank you. The case of Boren v. Estrue is submitted.
judges: Hug, McKeown, W. Fletcher